# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DISTANT SEA JARAMILLO,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,[1]

Defendant.

Case No. 1:25-cv-01717-JLT-SKO

FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, THE FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE REVERSED, AND THE ACTION BE REMANDED TO THE COMMISSIONER FOR FURTHER PROCEEDINGS

(Doc. 11)

14-DAY DEADLINE

## I. INTRODUCTION

On December 2, 2025, Plaintiff Distant Sea Jaramillo ("Plaintiff") filed a complaint seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Magistrate Judge.[2]

For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be granted, that the final judgment of the Commissioner be reversed, and that the action be remanded to the Commissioner for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1993 and has at least a high school education. (Administrative Record ("AR") 90, 243, 911.) Plaintiff filed a claim for SSI on September 5, 2018, alleging he became disabled on August 30, 2018, due to a traffic accident, a brain injury, memory loss, seizures, anxiety, depression, bipolar disorder, cocaine use, and marijuana use. (AR 81, 134–25, 144–45, 163, 169, 242, 298.)

### A. Relevant Evidence of Record[3]

In August 2018, Plaintiff was admitted to a mental hospital for his psychiatric problems. (AR 636.) He reported that he "attempted to kill himself by crashing his car into a parked car." (AR 648.) His history of bipolar disorder and depression was noted. (AR 648.) On examination, Plaintiff exhibited restlessness, rapid speech, racing thoughts, elevated mood and affect, distorted and delusional thought content, impaired memory, impaired insight and judgment, and below average fund of knowledge. (AR 733.) He was assessed with bipolar disorder with psychotic features. (AR 734.)

Plaintiff presented for a behavioral health assessment in October 2018. (AR 748–52.) He reported having graduated high school and working at a local gym doing part-time cleaning. (AR 750.) His mental status showed poor self-concept, hostile mood at times, and a history of visual hallucinations and mania. (AR 751.) He was referred to a higher level of care due to his hospitalization and diagnosis of bipolar disorder with psychotic features. (AR 751.)

In October 2019, Plaintiff presented for an initial mental health appointment complaining of suicidal ideation, anxiety, and depression. (AR 703–10.) A mental status examination showed

---

[2] The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. On July 15, 2026, this case was reassigned to the undersigned. (*See* Doc. 17.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

agitated affect, hopelessness, obsessive thoughts, poor insight, poor judgment, pressured speech, and suicidal ideation. (AR 708.)

That next month, Plaintiff presented for a follow up appointment to treat bipolar disorder and depression. (AR 697–702.) He reported suicidal ideation. (AR 697.) He reported that he obtained a "part-time seasonal job" but did "not see this as a success." (AR 701.) On examination, Plaintiff had anxiety, irritability, poor insight and judgment, and suicidal ideation. (AR 700.)

In December 2019, Plaintiff presented for another follow up appointment to treat bipolar disorder and depression. (AR 691–96.) He reported anxious and fearful thoughts, depressed mood, and thoughts of death or suicide. (AR 691.) He stated that he is "keeping his part time job and is hopeful it will become permanent." (AR 691.) His mental status examination showed anxiety, irritability, grandiosity, obsessive thoughts, poor insight, and pressured speech. (AR 694.)

Plaintiff presented for a psychiatric evaluation with Doxie Telib Palma, NP, in April 2020. (AR 819–23.) He reported depressive symptoms, including sleep interruption, poor appetite, sadness, anergia, and lack of motivation. (AR 819.) On examination, NP Palma found Plaintiff had depressed mood and affect, loose associations, impaired immediate memory, moderately impaired judgment and insight, mildly impaired attention span, and decreased general fund of knowledge. (AR 821.)

In April 2021, NP Palma completed a "Mental Residual Functional Capacity Questionnaire" indicating limitations that, according to her, began in February 2020. (AR 772–74.) NP Palma opined, among other things, that Plaintiff's performance of the following abilities was precluded for 10% (48 minutes) of an eight-hour workday: to understand and remember very short and simple instructions; to understand and remember detailed instructions; to carry out very short and simple instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods of time; to work in proximity to others without being distracted by them; to make simple work-related decisions; to accept instructions and respond appropriately to criticisms from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior, and to adhere to basic standard s of neatness and cleanliness; and to respond appropriately to changes in the work setting. (AR 772–73.) NP Palma also found that Plaintiff would be absent from work two days per month due to his mental

impairments. (AR 774.)

### B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on February 8, 2019, and on reconsideration on May 23, 2019. (AR 81, 163–67, 169–73.) Following a hearing, an Administrative Law Judge (ALJ) issued a written decision on August 21, 2021, finding Plaintiff not disabled. (AR 81–91.) Plaintiff appealed the decision to the district court. (AR 980–82.) The parties thereafter voluntarily remanded the case for further proceedings. (AR 983–86.) On remand, Appeals Council directed the assigned ALJ on remand to conduct a *de novo* hearing, to take any further action needed to complete the record, and to issue a new written decision.[4] (AR 995–96.)

At the hearing held on January 30, 2025, Plaintiff appeared with his representative and testified before an ALJ as to his alleged disabling conditions and work history. (AR 928–46, 951–52.) A vocational expert (VE) also testified at the hearing. (AR 946–51.)

### C. The ALJ's Decision

In a decision dated March 28, 2025, the ALJ once again found that Plaintiff was not disabled, as defined by the Act. (AR 898–912.) The ALJ observed that Plaintiff "is alleging disability since August 30, 2018, and [Plaintiff], through his representative, requested a closed period from August 30, 2018, through January 21, 2021." (AR 898.) The ALJ then proceeded to conduct the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 900–12.)

At step one, the ALJ found that Plaintiff

> engaged in substantial gainful activity during the following periods: January 22, 2021 to around the 3rd quarter of 2023, and from September 2024 to the present. . . . However, there has been a continuous 12-month period(s) during which [Plaintiff] did not engage in substantial gainful activity. The remaining findings address the period(s) [Plaintiff] did not engage in substantial gainful activity.

(AR 900–901.) At step two, the ALJ determined that Plaintiff "has the following severe impairments: bipolar disorder, anxiety disorder, and borderline intellectual functioning." (AR 901–902.) The ALJ further found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

[4] The Appeals Council also noted that Plaintiff filed a subsequent SSI claim on December 2, 2022, which was deemed duplicative and consolidated for purposes of the new decision. (AR 996.)

Appendix 1" ("the Listings") (step three). (AR 902–905.)

The ALJ then assessed Plaintiff's residual functional capacity[5] (RFC), and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff

> has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out simple instructions; and he can occasionally interact with supervisors, coworkers, and the public.

(AR 905–11.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the] decision." (AR 906.)

At step four, the ALJ determined that "[a]lthough [Plaintiff] had [substantial gainful activity] level work after the alleged closed period, this work did not occur before the alleged closed period, as such, he has no past relevant work." (AR 911.) The ALJ further found that, given his RFC, "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," specifically industrial cleaner, kitchen helper, and hospital cleaner (step five). (AR 911–12.) The ALJ concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, since September 5, 2018, the date the application was filed." (AR 899, 912.)

Because Plaintiff did not file exceptions, and the Appeals Council did not assume jurisdiction on its own motion, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R § 416.1484(d).

---

[5] Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the

Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B. Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of

showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV. DISCUSSION

Plaintiff asserts four allegations of error: (1) the ALJ failed to adjudicate properly the correct period at issue; (2) the ALJ failed to consider properly the persuasiveness of the medical opinion of NP Palma; (3) the ALJ failed to consider properly his subjective complaints; and (4) the ALJ failed to consider properly his RFC. (Docs. 11, 16.) The Commissioner counters that the ALJ: (1) adjudicated the correct period at issue; (2) reasonably evaluated the medical opinion evidence; (3) reasonably discounted Plaintiff's allegations of disabling symptoms; and (4) properly formulated Plaintiff's RFC. (Doc. 15.)

For the reasons that follow, the undersigned finds that the ALJ harmfully erred when they failed to address adequately the persuasiveness of NP Palma's opinion, resulting in an unsupported RFC, and on that basis will recommend that the decision be reversed and the action be remanded for further proceedings.[6]

### A. Legal Standard

Plaintiff's claim for SSI is governed by the agency's regulations concerning how ALJs must evaluate medical opinions. 20 C.F.R. § 416.920c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 416.920c(b)(2). And although the regulations eliminate the prior "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians'

---

[6] Because further proceedings will necessitate the re-evaluation of medical opinion evidence and re-assessment of the RFC, the undersigned shall not reach Plaintiff's additional allegations of error. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)). *See also id*. § 416.920c(b). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). *See also id*. § 416.920c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). *See also id*. § 416.920c(c)(2).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors:

*Woods*, 32 F.4th at 792; *see also* 20 C.F.R. § 416.920c(c)(3). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally

well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id.* (quoting § 404.1520c(b)(3)). *See also id.* § 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision. *See* 20 C.F.R. § 415.920b(c)(3).

With these legal standards in mind, the undersigned reviews the weight given to NP Palma's opinion.

**B. Analysis**

The ALJ determined that NP Palma's opinion was "not persuasive" because it was "partly supported by treatment" and "not consistent with [Plaintiff] returning to work a few months before [the] form was completed" nor with evidence in the medical record showing "significant activities" and "some significant capacity." (AR 908.) As explained more fully below, the undersigned concludes that the ALJ's evaluation of NP Palma's opinion is deficient because the ALJ did not adequately discuss the supportability and consistency factors, and failed to articulate an explanation for rejecting that opinion that is supported by substantial evidence. *Woods*, 32 F.4th at 792 (holding that an ALJ can "reject an examining or treating doctor's opinion as unsupported or inconsistent" if the ALJ "provide[es] an explanation supported by substantial evidence"). Although "the [] regulations eliminate the previous hierarchy of medical opinion testimony that gave special status to treating physicians, ALJs must still provide sufficient reasoning for federal courts to engage in meaningful appellate review." *Shannon B. v. Comm'r, Soc. Sec. Admin.*, Case No. 6:21-cv-01144-HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection" of certain evidence), and *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").)

**1. Supportability**

With respect to the supportability factor, the ALJ found that NP Palma's opinion is "partly

supported by treatment," but did not identify such "treatment" that purports to only "partly support" the opinion. Although, as the Commissioner points out (Doc. 15 at 6), a decision written "with less than ideal clarity" must be upheld "if the agency's path may reasonably be discerned," *Molina*, 674 F.3d at 1121, because the ALJ did not cite to any records, the undersigned cannot reasonably discern to what evidence of "treatment" the ALJ refers and how such evidence does, or does not, support NP Palma's opinion. *See Sarishamshajian v. Kijakazi*, No. 1:22-CV-00499-SKO, 2023 WL 6049883, at *6 (E.D. Cal. Sept. 15, 2023) ("[N]either the Court, nor the Acting Commissioner, may *post-hoc* comb the administrative record to find support for the ALJ's finding as to the persuasiveness of [a medical] opinion.) (internal quotations omitted).

More critically, the ALJ failed to mention—much less discuss—NP Palma's examinations of Plaintiff and the extent to which the examinations do (or do not) support her opined limitations, including her findings of depressed mood and affect, loose associations, impaired immediate memory, moderately impaired judgment and insight, mildly impaired attention span, and decreased general fund of knowledge. (*See* AR 819–23.) Without any explanation as to how NP Palma's (seemingly abnormal) examination findings lend support, or lack thereof, to the opined limitations, the undersigned concludes that the ALJ's supportability analysis lacks substantial evidence. *See Schmitzer v. O'Malley*, No. 1:22-CV-1038 JLT BAM, 2024 WL 4345772, at *5 (E.D. Cal. Sept. 30, 2024) (finding error in the supportability discussion where "the ALJ did not make any findings as to what extent—if any—Dr. Pietruszka supported the limitations identified in" the opinions and "failed to explain to what extent Dr. Pietruszka's own treatment records did not support his opinions."); *Katherine D. v. Comm'r, Soc. Sec. Admin*., No. 6:20-CV-1920-MO, 2024 WL 244625, at *6 (D. Or. Jan. 23, 2024) ("Regarding 'supportability,' the ALJ erred by failing to discuss the strength of the evidence underlying Dr. Hallenburg's conclusions."); *Ann M. v. Kijakazi*, No. 2:23-CV-01081-MAA, 2024 WL 39193, at *5 (C.D. Cal. Jan. 3, 2024) (finding a supportability analysis insufficient where "the ALJ did not explain why she found [the medical] opinions not supported, nor did she cite any findings in [the] treatment notes that demonstrate a lack of support").

**2. Consistency**

The ALJ's evaluation of the consistency factor is equally deficient. The ALJ found that NP

Palma's opinion was inconsistent with Plaintiff's admitted return to full-time work in January 2021, as well as with evidence that he is a high school graduate, worked part-time in 2018 and 2019, produced music, and had "some significant capacity" during mental status examinations prior to 2020. (AR 908 (citing AR 691, 701, 750, 751).) First, because Plaintiff alleged a closed period predating his return to full-time work (*see* AR 898), the ALJ's use of his post-period employment to reject NP Palma's opinion is contrary to Ninth Circuit precedent. *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002) ("[A]n applicant's employment that begins after the end of the period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a 'specific and legitimate' reason for rejecting the opinions of examining physicians that an individual is disabled.").

Next, Plaintiff did not graduate with a high school diploma; rather, he obtained a GED. (AR 911.) And as for the ALJ's reliance on medical records documenting Plaintiff's reports of part-time work[7] and mental status examinations showing "significant capacity," such reliance overlooks that these same records also document objective findings—unmentioned by the ALJ—that appear to be consistent with NP Palma's opined limitations, such as anxiety, irritability, grandiosity, obsessive thoughts, poor insight, and pressured speech (AR 691–96); anxiety, irritability, poor insight and judgment, suicidal ideation (AR 697–702); and poor self-concept, hostile mood at times, and a history of visual hallucinations and mania, necessitating a higher level of care (AR 748–52). Based on these cited records, ALJ's evaluation of the consistency of NP Palma's opinion appears based on mischaracterized and "cherry-picked" notations from the medical evidence, which is improper. *Buethe v. Comm'r of Soc. Sec.*, No. 2:20-cv-552-KJN, 2021 WL 1966202, at *4 (E.D. Cal. May 17, 2021) (collecting cases). *See also* 42 U.S.C. § 423(d)(5)(B) (requiring an ALJ base the decision on "all the evidence available in the [record]."); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (the court may not affirm where the ALJ "pick[ed] out a few isolated instances of improvement" to support the denial of benefits).

The undersigned is aware of the general proposition that ALJ's are to resolve ambiguities and conflicts in the record. *Ford*, 950 F.3d at 1154. It is also mindful of the deference desired by the

[7] This work was found to not constitute substantial gainful activity. (AR 901.)

agency in promulgating these revised regulations. *See* REVISIONS TO RULES, 82 Fed. Reg. 5844-01 at *5860 ("[The revised regulations are] essential for [the agency's] administration of a massive and complex nationwide disability program where the need for efficiency is self-evident."). However, the text of the regulations explicitly requires an explanation of how the ALJ considered the supportability and consistency of an opinion. 20 C.F.R. § 416.920c(b)(2). Harmonizing this requirement with Ninth Circuit law prohibiting cherry-picking and requiring a detailed and thorough summary of conflicting evidence, and an interpretation and findings thereon, the ALJ must explicitly address evidence that supports and is consistent with a less-than-persuasive medical opinions, and should this evidence fail to persuade, the ALJ must provide legally sufficient reasons. *See Buethe*, 2021 WL 1966202, at *7 (citing *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("[T]he ALJ must provide sufficient reasoning that allows [for] review.")). *See also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1994) (while the ALJ need not discuss all evidence presented to them, they must explain why "significant probative evidence has been rejected"). This the ALJ did not do, and therefore the undersigned declines to find substantial evidence supports the RFC. *See Garmany v. O'Malley*, No. 1:23-CV-00607-HBK, 2024 WL 3105824, at *6 (E.D. Cal. June 24, 2024) (errors in addressing medical opinion evidence "calls into question whether the assessed RFC . . . [is] supported by substantial evidence").

**C. Harmless Error Analysis**

The ALJ's erroneous analysis of the persuasiveness of NP Palma's opinion is not harmless.[8] Errors are harmless when a reviewing court "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout*, 454 F.3d at 1056 . Here, the VE testified that the "maximum number of absences that would be tolerated by an employer for unskilled work" would be one full day per month (AR 949), while NP Palma opined that Plaintiff would be absent two days per month (AR 774). In addition, district courts in the Ninth Circuit have held that a moderate limitation in the ability to deal with changes encountered

[8] In finding the ALJ's evaluation of NP Palma's opinion was erroneous, the undersigned does not consider whether the ALJ complied with the remand order(s) (*see* Doc. 11 at 8–9), as such matter is not reviewable by this Court. *See Tyler v. Astrue,* 305 Fed. App'x 331, 332 (9th Cir. 2008); *Alacar v. Comm'r of Soc. Sec.*, No. 2:22-CV-149-TLN-KJN, 2022 WL 17418356, at *3–4 (E.D. Cal. Dec. 5, 2022).

in this workplace is not accounted for by a restriction in the RFC to simple work, *see Berenisia Madrigal v. Saul*, No. 1:18-cv-01129-SKO, 2020 WL 58289, at *5 (E.D. Cal. Jan. 6, 2020), nor is a moderate limitation in accepting instructions from supervisors addressed by a limitation to occasional interactions with supervisors, *see Ninh M. v. Bisignano*, No. 24-CV-08513-PCP, 2026 WL 1069987, at *4–5 (N.D. Cal. Mar. 31, 2026).

The undersigned therefore cannot "confidently conclude" that "no reasonable ALJ" considering NP Palma's opinion could have reached a different disability determination. *Stout*, 454 F.3d at 1056. *See David C. v. Comm'r of Soc. Sec.*, No. 23-CV-0655-WQH-MMP, 2024 WL 3596856, at *12 (S.D. Cal. July 31, 2024) (error not harmless where the Court finds the ALJ erred by failing to address adequately the supportability factor when evaluating a medical opinion); *see also Suzi Marie H. v. O'Malley*, No. 3:22-cv-01963-WQH-AHG, 2024 WL 965233, at *14 (S.D. Cal. Mar. 5, 2024) (determination that medical opinions were unpersuasive without providing an explanation supported by substantial evidence was "not inconsequential since it could have impacted the final RFC.").

**D. Remand for Further Proceedings**

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Here, the undersigned agrees with Plaintiff (*see* Doc. 11 at 16) that remand for additional proceedings is the appropriate remedy because the persuasiveness of NP Palma's opinion must be analyzed further before a determination of disability may be made for the adjudicative period.[9] *See*

---

[9] Although the undersigned does not decide the question of whether the ALJ failed to adjudicate the correct period (*see* n.6, *supra*), they nevertheless observe that there appears to be some ambiguity in the ALJ's decision as to the period that is being adjudicated, particularly in view of Plaintiff's allegation of a closed period (AR 898). (*Compare* AR 900–901 ("The remaining findings address the period(s) [Plaintiff] did not engage in substantial gainful activity," *i.e.*, ***prior to January 22, 2021***) with AR 902 (concluding that Plaintiff "has not been under a disability, as defined in the Social Security Act, ***since September 5, 2018, the date the application was filed***.") (emphasis added).) On remand, the ALJ shall make clear the adjudicative period at issue.

20 C.F.R. § 416.920c(c)(2); *see also Cesar C. v. Dudek*, No. 1:24-CV-03177-EFS, 2025 WL 1065959, at *10 (E.D. Wash. Apr. 9, 2025) (remanding for further proceedings where the ALJ "failed to address the supportability of [medical] opinions in any meaningful way"); *Buethe*, 2021 WL 1966202, at *7 (Because the ALJ cherry-picked facts and ignored probative evidence, including medical opinion evidence, "the proper remedy is remand, where the ALJ may either (a) reaffirm [their] decision after a more thorough explanation of why these opinions were unsupported by and inconsistent with the relevant evidence, or (b) award benefits."); *cf. Emily B. v. Kijakazi*, No. 4:20-CV-05174-SMJ, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

## V. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Doc. 11) be GRANTED;
2. The final decision of the Commissioner of Social Security be REVERSED;
3. This matter be REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
4. The Clerk of Court be DIRECTED to enter judgment in favor of Plaintiff Distant Sea Jaramillo, and against Defendant Commissioner of Social Security, and to CLOSE this action.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

The District Judge will review the Magistrate Judge's findings and recommendations pursuant

---

As to the ultimate outcome of Plaintiff's claim during the adjudicative period, the undersigned expresses no opinion as to the level of persuasiveness that should be ascribed to NP Palma's opinion. Nor does the undersigned express what Plaintiff's RFC ultimately should be. These are for the ALJ to decide. *Ford*, 950 F.3d at 1154.

to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 27, 2026**

/s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE